IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

SARAH M. FALSEY    )
   o/b/o B.J.D.E.    )
v.    )    No. 3:12-0466
    )
CAROLYN W. COLVIN    )
   Acting Commissioner of    )
   Social Security    )

## **M E M O R A N D U M**

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Childhood Supplemental Security Income ("SSI") to Plaintiff's minor child, B.J.D.E. ("Claimant"), as provided by the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 13), to which Defendant has responded (Docket Entry No. 14). Plaintiff has also filed a subsequent reply to Defendant's response (Docket Entry No. 17). This action is before the undersigned for all further proceedings pursuant to the consent of the parties and the District Judge in accordance with 28 U.S.C. § 636(c) (Docket Entry No. 22).

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion is **DENIED** and the decision of the Commissioner is **AFFIRMED**.

### **I. INTRODUCTION**

Plaintiff Sarah Falsey filed an application for SSI on behalf of Claimant, her minor son, on June 11, 2008. *See* Transcript of the Administrative Record (Docket Entry No. 11), at 58.[1]

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right

She alleged a disability onset date of March 1, 2008. AR 58, 90, 121. She asserted that Claimant suffered headaches, seizures, and epilepsy stemming from a brain tumor. AR 14, 58, 64, 124.

Plaintiff's applications were denied initially and upon reconsideration. AR 58-60, 65-68. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Donald A. Rising on August 5, 2010. AR 25-40. On September 13, 2010, the ALJ issued a decision unfavorable to Plaintiff. AR 8-10. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on March 19, 2012 (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on September 13, 2010. AR 8. Based upon the record, the ALJ made the following enumerated findings:

1. The claimant was born on Mary 25, 2007. Therefore, he was an older infant on June 11, 2008, the date application was protectively filed, and is currently an older infant (20 CFR 416.926a(g)(2)).

2. The claimant is a child and therefore has never engaged in substantial gainful activity (20 CFR 416.924(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: brain lesion and seizure disorder (20 CFR 416.924(c)).

*** 

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

---

corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

<pre>
                                        ***
</pre>

5. The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).

<pre>
                                        ***
</pre>

6. The claimant has not been disabled as defined in the Social Security Act at any time relevant to this decision (20 CFR 416.924(a)).

AR 14-21.

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of*

*Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

Section 1614(a)(3)(c)(i) of the Social Security Act provides that an individual under the age of eighteen is disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Pursuant to 20 C.F.R. § 416.924, the

ALJ must apply a three-part test to evaluate a child's disability: (1) whether the child is working; (2) whether the child has a severe medically determinable impairment; and (3) whether the child has an impairment that meets, medically equals, or functionally equals a listed impairment.

A child may also be found disabled if he has "a severe impairment or combination of impairments that does not meet or medically equal any listing … [but] results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a). In other words, the impairment or impairments "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* A "marked" limitation is, generally, an impairment that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation is an impairment that "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3). A child's functioning is assessed by considering how the child functions in his activities with respect to six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). Each of these domains is assessed based on the age of the child—in this case, older infants, ages 1-3. 20 C.F.R. § 416.926a(h)(2)(ii).

In the instant case, the ALJ found that Claimant has a less than marked limitation under "health and physical well-being" domain, and no limitations under the remaining domains. Because the ALJ found that Claimant did not have marked limitations in two domains of functioning, nor an extreme limitation in any of the domains, it was determined that Claimant is not disabled.

**C. Plaintiff's Assertions of Error**

Plaintiff argues that the ALJ erred by: (1) failing to properly consider whether Claimant met Listings 111.00 and/or 113.00; (2) not calling a Medical Expert to testify regarding whether Claimant meets or medically equals Listings 111.00 and/or 113.00; (3) finding that Claimant had a less than marked limitation in health and physical well-being rather than an extreme limitation in this domain; and (4) not properly evaluating the credibility of Claimant's mother's statements as required by Social Security Ruling ("SSR") 96-7p. DE 13-1 at 1-2. Plaintiff therefore requests that the Commissioner's decision be reversed and benefits awarded, or, alternatively, that this case be remanded for further consideration by a different ALJ. *Id.* at 14.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). The Court will address each of Plaintiff's assertions of error below.

Of note, counsel for Plaintiff advised during the hearing before the ALJ that Plaintiff seeks a closed period of disability, from June 11, 2008 to August 31, 2009. AR 11, 167; DE 13-1 at 1. The alleged onset date of disability was thus amended to June 11, 2008. DE 13-1 at 2.

**1. The ALJ's consideration of whether Claimant met Listings 111.00 and/or 113.00.**

Plaintiff argues in her brief that Claimant's condition, which includes seizure disorder and headaches, meets Listing 111.00 (Neurological Disorders) and/or Listing 113.00 (Malignant Neoplastic Diseases). DE 13-1 at 6. Notably, Plaintiff does not make an actual argument in support of her contention that Claimant meets a listed impairment under 113.00, but instead focuses on how Claimant's condition meets one or more of the impairments listed under 111.00. This is not insignificant because, as noted by Defendant, 113.00 is a general category that includes several different impairments. 20 C.F.R. § Part 404, Subpart P, Appendix 1. Plaintiff therefore appears to ask the Court to make her case for equivalence, despite it being Plaintiff's burden to do so. *See Lance v. Astrue*, No. 3:07-cv-411, 2008 WL 3200718, at *4 (E.D. Tenn. Aug. 5, 2008) ("Plaintiff has the burden … of demonstrating, through medical evidence, that [her] impairment(s) meet all of the specified medical criteria contained in a particular listing.") (internal citation omitted). Regardless, the Court finds that there is substantial evidence to support the ALJ's determination that Claimant does not meet any of the listed impairments under 111.00 or 113.00.

Plaintiff contends that the ALJ failed to evaluate Claimant's condition under the criteria contained in Listings 111.02 (Major Motor Seizure Disorder) and/or 111.03 (Nonconvulsive Epilepsy). DE 13-1 at 7. Plaintiff states that Claimant experienced seizures on May 29, 2008 and June 5, 2008 despite taking prescribed medication intended to prevent seizures, and argues that such evidence demonstrates that Plaintiff experienced seizures "at the approximate frequency

8

contemplated in" Listing 111.02(A) (*Id*. at 7-8), which requires that an impairment meet the following criteria:

> A. Convulsive epilepsy. In a child with an established diagnosis of epilepsy, the occurrence of more than one major motor seizure per month despite at least three months of prescribed treatment. With:
>
> 1. Daytime episodes (loss of consciousness and convulsive seizures); or
>
> 2. Nocturnal episodes manifesting residuals which interfere with activity during the day.

20 C.F.R. § Part 404, Subpart P, Appendix 1. Despite claiming that "signs and findings … obviously suggest[]" that Claimant's condition met such criteria (DE 13-1 at 9), Plaintiff fails to set forth any medical proof that does so, and instead relies on her own testimony regarding the frequency of Claimant's seizures. DE 13-1 at 7-8.

Although Claimant was diagnosed with "[s]ymptomatic partial epilepsy" (AR 222, 297-99, 326), there is no indication that Claimant suffered "more than one major motor seizure per month," as required by Listing 111.02(A), or "at least one major motor seizure in the year prior to application," as required by Listing 111.03. Plaintiff testified that Claimant experienced seizures on May 29 and June 5 of 2008, but there is no evidence of this in the record. Moreover, despite stating that Claimant experienced seizures on these dates, Plaintiff also testified during her hearing that Claimant has not had any seizures since starting the anti-seizure medication in April of 2008. AR 30, 32. As such, Plaintiff asks the Court to rely solely on her own contradictory testimony to find that the ALJ erred by finding that Claimant does not meet the criteria found in Listing 111.02, which the Court declines to do.

Plaintiff also argues that the ALJ failed to analyze Claimant's condition under Listing 111.03, but fails to provide any support, or even make an argument, that Claimant meets the criteria in Listing 111.03. To meet this listing, which refers to nonconvulsive epilepsy, the

9

claimant must demonstrate that he experienced "more than one minor motor seizure per week" despite at least three months of prescribed treatment. 20 C.F.R. § Part 404, Subpart P, Appendix 1. Plaintiff faults the ALJ for failing to find that Claimant's condition meets these criteria (DE 13-1 at 7), but again fails to point to any supporting medical evidence.

The significance of Plaintiff's failure to provide any medical evidence is compounded by the fact that there is ample evidence to support the opposite conclusion. During an emergency room visit on May 27, 2008, Dr. John Rohde stated that Claimant had experienced "no clear loss of consciousness" and "no lateralizing seizure activity." AR 219. On May 22, 2008, Dr. John Flatt noted that Claimant had experienced no seizures while taking Keppra, the anti-seizure medication, and stated that Claimant "has been doing well without any intercurrent seizures." AR 221. A note from September 29, 2008, several months after Claimant's alleged seizures on May 29 and June 5, also indicates that Claimant did not experience any seizures since starting Keppra. AR 281, 293. Claimant was also described as "seizure-free" during a subsequent visit on October 30, 2008. AR 297. Simply put, there is no medical evidence indicating that Claimant suffered seizures on the dates Plaintiff claims he did.

As noted by Defendant, in order to meet or medically equal a listed impairment, a claimant must exhibit all of the elements contained in the listing. *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). Listings 111.02 and 111.03 require the presence of varying levels of seizure activity "despite at least three months of prescribed treatment." 20 C.F.R. § Part 404, Subpart P, Appendix 1. Claimant began taking anti-seizure medication in April of 2008. AR 32. After initially testifying that Claimant did not suffer any seizures after starting the Keppra medication, Plaintiff later claimed that Claimant experienced seizures in May and June of 2008. AR 35. Even if the Court accepts that Claimant had seizures on these dates, a

fact that is not substantiated by the record, Plaintiff has still failed to meet the criteria of Listings 111.02 and 111.03, both of which require the presence of seizure activity following at least three months of prescribed treatment. Seizures on May 29 and June 5 would have occurred less than three months after Claimant began taking prescribed anti-seizure medication, thereby failing to meet the three-month threshold contemplated by the listings. Plaintiff's argument for equivalence must therefore fail.

With respect to Listing 113.00, Plaintiff's argument appears to involve 113.00(K)(4)'s statement that benign brain tumors are evaluated under the criteria contained in 111.05, which consists of evaluation of seizure disorders under 111.02 and 111.03. DE 13-1 at 7; 20 C.F.R. § Part 404, Subpart P, Appendix 1. Pursuant to the analysis above, however, Plaintiff fails to provide support for her argument that Claimant's condition meets the criteria listed in 111.02 or 111.03. As such, this argument also fails.

An impairment that meets only some of the specified criteria contained in a listing, no matter how severely, does not qualify. *Lance*, 2008 WL 3200718, at *4 (citing *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990)). Here, Plaintiff has failed to demonstrate that Claimant's condition meets all of the criteria for any of the listed impairments under 111.00 and 113.00, and has thus failed to carry her burden. The Court thus finds no error in the ALJ's determination.

**2. The ALJ's decision not to call a Medical Expert to testify regarding Listings 111.00 and/or 113.00.**

Plaintiff next argues that the ALJ committed reversible error by failing to call a medical expert during her hearing to determine whether Claimant met any of the listed impairments under 111.00 or 113.00, in violation of SSR 96-6p. Plaintiff claims that the issue of whether Claimant

met one of the listings was a "close call" and that the ALJ, as a "lay person," should have retained a medical expert. DE 13-1 at 10.

Plaintiff's statement that the determination of whether Claimant met one of the listings should have been determined by a medical expert is simply not correct. In fact, SSR 96-6p, the very opinion used by Plaintiff in support of her argument, explicitly holds otherwise: "The [ALJ] … is responsible for deciding the ultimate legal question whether a listing is met or equaled." SSR 96-6p, 1996 WL 374180, at *3. Furthermore, Social Security regulations permit, but do not require, that the ALJ "ask for and consider opinions from medical experts on the nature and severity of [the claimant's] impairment(s)," and whether they equal the requirements of a listed impairment. *Lance*, 2008 WL 3200718, at *4 (citing 20 C.F.R. § 416.927(f)(2)(iii)).

Additionally, the Court does not agree with Plaintiff's contention that the evidence of record should have led the ALJ to call a medical expert during the hearing. SSR 96-6p requires an ALJ to obtain an updated medical opinion from a medical expert in two situations: (1) when no additional medical evidence is received, but the ALJ believes that the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or (2) when additional medical evidence is received that the ALJ believes may change the state agency medical or psychological consultant's finding that the claimant's impairment is not equivalent to any listed impairment. The ALJ clearly did not believe that the medical evidence of record suggested equivalence with a listing, finding instead that the state agency opinions were consistent with the overall record. AR 16. Plaintiff therefore appears to argue that the second required basis under SSR 96-6p should have prompted the ALJ to call a medical expert.

Confusingly, Plaintiff asserts in her reply brief that the "new evidence of the child's mother's allegations regarding persistent headaches," which ostensibly refers to Plaintiff's testimony during her hearing, provided a basis upon which a medical expert "should have been called to testify *at the hearing* regarding the nature and severity of [Claimant's] impairments and whether [Claimant] met or equaled" one of the listed impairments. DE 17 at 2-3 (emphasis added). However, since the ALJ did not hear Plaintiff's testimony regarding the frequency of the headaches until the hearing, it is unclear how the ALJ would have known to call a medical expert to testify at the same hearing.

Regardless, the Court finds that the ALJ's decision not to call a medical expert at most represents harmless error. The ALJ explicitly adopted the opinions of the state agency physicians, which found that Claimant's impairments did not equal one of the listings, based on their consistency with the overall record even after hearing Plaintiff's testimony during the hearing. AR 16. Because the ALJ did not determine that the record may support a judgment of equivalence or determine that the state agency opinions may have changed based on any additional evidence, including Plaintiff's testimony, neither prong of SSR 96-6p's requirement to obtain an updated medical evaluation was met. The ALJ was therefore not required to call upon a medical expert. *See Lyke v. Astrue*, No. 3:08-cv-0510, 2011 WL 2601429, at *6 (M.D. Tenn. June 30, 2011) (holding that ALJ did not err in declining to call a medical expert after finding that record did not support equivalence and that no additional evidence suggested that a non-examining state agency medical consultant would have changed the ALJ's opinion that claimant's impairment did not equal a listing).

Plaintiff cites two medical records in her brief to support her argument that a medical expert should have been retained: an MRI from April 16, 2008 demonstrating a left posterior

temporal lobe abnormality of the brain (AR 191), and an electroencephalogram ("EEG") from April 17, 2008 indicating generalized polymorphic delta and absence of posterior dominant background rhythm. AR 185-86. The only listing that Plaintiff claims is met by Claimant's condition is 111.02(A). DE 13-1 at 9. However, the medical records cited by Plaintiff do not indicate that Claimant's condition meets the criteria contemplated by Listing 111.02(A). For one, the medical records document treatment received two months before the amended alleged onset date, and thus before the closed period of disability relevant to this case begins. DE 13-1 at 2. While this is not necessarily fatal to Plaintiff's argument, it is significant in light of medical evidence indicating that Plaintiff had no additional seizures after April of 2008. AR 195, 281. As previously discussed, 111.02 and 111.03 both require evidence of seizure activity despite three months of prescribed treatment. 20 C.F.R. § Part 404, Subpart P, Appendix 1. Plaintiff began taking Keppra in April of 2008 (AR 30, 223-24), at approximately the same time as the scans performed in the medical records cited by Plaintiff. Therefore, even if there were medical records corroborating Plaintiff's claim that Claimant suffered seizures on May 29 and June 5 of 2008, these would have occurred before the expiration of the three-month period after Claimant began taking Keppra., and before the alleged onset date of June 11, 2008.

Additionally, the medical records overwhelmingly indicate that Claimant suffered no seizures after he began taking anti-seizure medication in April of 2008. AR 186, 195, 281, 286, 293, 298-300, 310. As such, there is no evidence to suggest that Claimant's condition is equivalent to this listing, other than Plaintiff's equivocal testimony during her hearing. SSR 96-6p requires that an updated medical opinion be obtained "*only* when the ALJ believes that the evidence could change a consultant's finding that the impairment is not equivalent to a listed impairment." *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 723 (6th Cir. 2012) (emphasis

in original). Because there is no such evidence presented by Plaintiff, the Court finds no error in the ALJ's decision not to obtain an updated medical expert opinion.

In her reply to Defendant's responsive brief, Plaintiff cites additional medical records indicating that Claimant suffered headaches in August and September of 2008, which, Plaintiff claims, support her argument for functional equivalence with Listing 111.02. DE 17 at 2; AR 271, 281-82. Plaintiff claims that the ALJ ignored these records in determining that Claimant's condition did not equal this listing. DE 17 at 2. However, the ALJ clearly discussed the records cited by Plaintiff, noting that Claimant's headaches were occasional and resolved without intervention. AR 21, 281. The September 29, 2008 record cited by Plaintiff also describes Claimant's headaches as "a few times a month, but not significant." DE 281. This lack of severity is underscored by the treating physician's recommended course of action, which involved monitoring and ordering additional imaging only if the condition worsened. AR 282. Given the documented resolution of Claimant's seizures after beginning Keppra in April of 2008, the Court is not persuaded that the infrequency and resolution of Claimant's headaches created a need for the ALJ to retain a medical expert to determine whether Claimant's condition met any of the listings under 111.00.

If an ALJ finds that a claimant's condition is not equivalent to one of the listed impairments, SSR 96-6p's requirement that expert medical opinion evidence be received into the record may be satisfied by a state agency evaluation. SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). This is significant because Plaintiff has failed to provide any expert medical opinion in support of her claim. There are instead two medical opinions from state agency physicians, one by Dr. Louise G. Patikas and one by Dr. John P. Fields, both of whom determined that

Claimant's condition did not meet the criteria in any of the listed impairments. AR 283-288; 305-10. Accordingly, the Court finds no error in the ALJ's decision.

**3. The ALJ's finding that Claimant had a less than marked limitation in Health and Physical Well-Being.**

Plaintiff next claims that the ALJ improperly found that Claimant had a less than marked limitation in health and physical well-being, and that a finding of extreme limitation in this area was warranted. Plaintiff again points to the EEG performed in April of 2008 that demonstrated generalized polymorphic delta, as well as records indicating that Claimant suffered from increased fussiness and screaming. DE 13-1 at 11. Plaintiff also notes that, as of September 29, 2008, Claimant was experiencing headaches a few times per month. *Id*.

In determining whether a child has an "extreme" limitation, an ALJ considers the claimant's "functional limitations resulting from all of [his] impairments, including their interactive and cumulative effects." 20 C.F.R. § 416.926a(e)(1)(i). An "extreme" designation is the rating given to the worst limitations. 20 C.F.R. § 416.926a(e)(3)(i). If a claimant has not reached three years of age, the ALJ will find an "extreme" limitation only if the claimant is "functioning at a level that is one-half of your chronological age or less when there are no standard scores from standardized tests in your case record." 20 C.F.R. § 416.926a(e)(3)(ii).

Here, the Court finds there is substantial evidence to support the ALJ's determination that Claimant had a less than marked limitation during the time period at issue. The ALJ noted that despite the confirmed brain lesions, there is no objective medical evidence demonstrating resultant limitations that were marked or extreme. AR 21. The ALJ also noted that multiple MRI scans revealed no worsening of the brain lesion, and further noted that "[n]eurological examinations remain within normal limits and diagnostic studies repeatedly show no change and

stable appearance of left temporal lobe lesion compared with multiple exams dating back to April 2008." AR 21, 282. He also discussed the resolution of Claimant's paresis in April of 2008, two months prior to the amended alleged onset date, and the lack of any documented seizures since Claimant began taking Keppra. AR 21.

Plaintiff does not attempt to refute these findings in her brief. She instead notes that Claimant was seen on August 25 and September 29 of 2008 for headaches. DE 13-1 at 11. As previously discussed, however, the September 29, 2008 record referenced by Plaintiff shows that Claimant "has had some headaches a few times a month, *but not significant*." AR 281 (emphasis added). The same office note also shows that such headaches "resolve[d] quickly with no interventions." AR 281.

As discussed by the ALJ, Plaintiff failed to provide an opinion from any treating physician regarding any functional limitations relating to Claimant's condition. AR 16. The ALJ thus appropriately relied on the opinions of the state agency physicians in finding that Claimant had a less than marked limitation in health and physical well-being. AR 21, 286; *See Overholt v. Astrue*, No. 3:07-cv-322, 2008 WL 2645662, at *9 (E.D. Tenn. July 2, 2008) ("ALJ is entitled to rely on the opinions of state agency doctors) (citing *Rice v. Barnhart,* 384 F.3d 363, 370 (7th Cir. 2004)). *See also* 20 C.F.R. § 416.927(e)(2)(i) ("State agency medical and psychological consultants … are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."). The Court therefore finds no error in the ALJ's determination.

**4. The ALJ's evaluation of Plaintiff's credibility.**

Plaintiff finally argues that the ALJ improperly evaluated Plaintiff's credibility in violation of SSR 96-7p.[1] Plaintiff claims that while the ALJ found no evidence of symptoms that were of the severity described by Plaintiff during her hearing, the ALJ failed to address her allegations regarding the frequency and severity of Claimant's headaches. DE 13-1 at 13.

SSR 96-7p requires that the ALJ's credibility finding contain "specific reasons" that are "supported by evidence in the case record[.]" SSR 96-7p, 1996 WL 374186, at *2. Here, the Court finds that the ALJ's credibility determination, which includes ample citations to the record, is supported by substantial evidence.

The ALJ stated in his opinion that "there is really no evidence of symptoms of the severity [Plaintiff] describes in the record." AR 16. Indeed, the ALJ referenced multiple records suggesting that Claimant's condition had improved significantly, including an office note from January 26, 2009 indicating that Plaintiff had not suffered any seizures since starting Keppra, and multiple MRI scans demonstrating that Plaintiff's brain lesion was unchanged. AR 16.

Nevertheless, Plaintiff dismisses the impact of these records and faults the ALJ for failing to adequately address the frequency of Claimant's headaches. Plaintiff again points to the previously discussed office note from September 29, 2008, which indicates that Claimant was experiencing headaches a few times per month (DE 13-1 at 13), but again fails to acknowledge that the note also states that such headaches were "not significant" and "resolve[d] quickly with no interventions." AR 281. Contrary to Plaintiff's statements otherwise, the ALJ discussed this in his opinion. AR 15-16.

---

[1] The Court notes that SSR 96-7p has been superseded by SSR 16-3p, which became effective on March 28, 2016. Because Plaintiff's complaint was filed in May of 2012, SSR 96-7p applies to the Court's analysis of this claim.

Plaintiff also fails to acknowledge the inconsistency in her own testimony. Plaintiff initially claimed during her hearing that Claimant had not experienced any seizures since he began taking anti-seizure medication. AR 30, 32. However, Plaintiff later stated that Claimant had experienced multiple seizures since starting Keppra, including one on May 29, 2008, and one on June 5, 2008. AR 35. Plaintiff points to no medical records to support this testimony, which is significant because the record instead indicates that Claimant has not experienced any seizures since starting Keppra in April of 2008. AR 293. This clearly undermines Plaintiff's credibility.

Despite this inconsistency, Plaintiff states that the ALJ's failure to "specifically state the amount of weight" given to her testimony represents "material error." DE 13-1 at 14. While SSR 96-7p mandates that the ALJ's credibility findings be "sufficiently specific," the Sixth Circuit has interpreted this requirement to mean that "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. Thus, the ALJ's explanation as to credibility must be consistent with the evidence of record. Here, the ALJ cited specific medical records that directly contradict Plaintiff's testimony regarding the frequency of Claimant's seizures, noting that there was "really no evidence of symptoms of the severity [Plaintiff] describes in the record." AR 16. Although the ALJ failed to specifically identify the amount of weight given to Plaintiff's testimony, this statement clearly indicates that he gave Plaintiff's testimony little weight. The Court thus finds that this omission represents harmless error.

As long as an ALJ cites substantial, legitimate evidence to support his factual conclusions, the Court does not second-guess: "If the ALJ's decision is supported by substantial

evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). *See also Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints."). In this case, the Court finds that the ALJ's findings were supported by substantial evidence, and therefore affirms his decision.

## V. CONCLUSION

For the above stated reasons, Plaintiff's motion for judgment on the administrative record (DE 13) is DENIED.

An appropriate Order will accompany this memorandum.

_____
BARBARA D. HOLMES
United States Magistrate Judge